UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JASAN SAYLES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:15-CV-612 (CEJ) |
| | ) |
| BSI FINANCIAL SERVICES, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on defendants' joint motion to dismiss plaintiff's first amended complaint, pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b). Plaintiff, who proceeds *pro se*, addresses defendants' arguments in a motion to strike the motion to dismiss.

On April 13, 2015, plaintiff Jasan Sayles filed this action seeking a temporary restraining order to prevent defendant BSI Financial Services (BSI) from foreclosing on real property located at 11932 Roseview Lane, in St. Louis County, Missouri. Following a hearing on April 14, 2015, the Court denied plaintiff's motion and the property was sold at auction later that day. On April 27, 2015, plaintiff filed a first amended complaint, asserting claims based on the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(e), the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq*., and the Missouri Merchandising Practices Act (MMPA), Mo.Rev.Stat. §§ 407.010 *et seq*., as well as claims of breach of contract,

promissory estoppel, fraudulent misrepresentation, declaratory judgment, and equitable lulling.[1]

I. **Background**

The Roseview Lane property was owned by plaintiff's aunt, Dorothy M. Willis. On August 16, 2006, Mrs. Willis obtained a mortgage from First NLC Financial Services, LLC, in the amount of $138,000. Three months before her death on November 17, 2012, Mrs. Willis executed a quit-claim deed in favor of plaintiff.[2] The mortgage was not in default when Mrs. Willis died. Plaintiff made payments in January and February 2013.

On May 23, 2013, the loan was assigned to Ventures Trust, and defendant BSI began servicing the loan. The principal balance at that time was $130,363.65. Id. On June 18, 2013, BSI sent a notice addressed to Mrs. Willis, informing her that the loan was in default and demanding payment in the amount of $7,112.16 by July 18, 2013. On August 1, 2013, BSI emailed plaintiff an application for mortgage assistance. There is no evidence that plaintiff completed the application.

On June 24, 2014, BSI sent a notice of eligibility for a loan extension and deferment agreement to "The Estate of Dorothy M. Willis, c/o Jasan Sayles." BSI offered to defer interest for the unpaid mortgage payments from January 1, 2013 through July 1, 2014. The deferred amount would become payable upon "refinancing or payoff of the loan <u>or at such time borrower is able to repay the deferred amount</u>." [Doc. # 7, p. 14 (emphasis in original)]. Under the terms of the

---

[1] Plaintiff also purports to bring claims for violations of the FDCPA and equitable lulling against the Klatt Law Firm (Klatt), BSI's attorneys of record. Klatt is not identified as a defendant in the caption or body of the complaint, nor has a summons been issued for service upon Klatt. However, the motion to dismiss was jointly filed by BSI and Klatt and the Court will assume for the purposes of the present motions that Klatt is properly named.

[2] The quit claim deed was not recorded until July 23, 2013. [Doc. #16-4].

2

agreement, the offer could be accepted by returning the completed agreement and $5,000 by July 10, 2014. Plaintiff did not sign the deferment agreement until July 15, 2014, and he did not pay the $5,000 necessary to finalize the agreement.

On December 11, 2014, Brian Sayer, the Klatt Law Firm, and Missouri SOT Inc., were appointed as co-successor trustees for the Willis mortgage. On March 1, 2015, plaintiff learned that Klatt intended to foreclose on the property on April 14, 2015. On March 20, 2015, plaintiff sent BSI a "Qualified Written Request" under RESPA.[3] On April 1, 2015, BSI notified plaintiff that it could not act on his request without "evidence showing that you have authority to act with respect to the decedent. BSI will need either a trust or will and probate documents showing that you are the administrator of the estate."[4] First Am. Comp. ¶ 30.[5] Also on April 1, 2015, BSI sent a letter addressed to the estate of Dorothy M. Willis, stating that it was "not eligible for an alternative to foreclosure" because the application was received too close to the scheduled foreclosure date, and that foreclosure could be avoided only by providing past due mortgage payments and late charges in the amount of $37,690.36. [Doc. #7, p. 42]. No payments were made in response to the letter.

## II. Discussion

Although defendants base their motion to dismiss on Fed.R.Civ.P. 12(b)(6), their primary argument throughout this litigation has been that plaintiff lacks

---

[3] A qualified written request (QWR) is correspondence that identifies a borrower's account and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).
[4] There is no allegation or evidence that plaintiff was appointed as the personal representative of the estate or that the property was held in a trust.
[5] Contrary to plaintiff's allegations in ¶¶ 28 and 30, plaintiff's QWR and BSI's written response are not attached to the complaint or otherwise entered in the Court record.

standing under Article III because he was not the borrower. A plaintiff's lack of standing implicates the district court's subject matter jurisdiction, which arises under Rule 12(b)(1). Faibisch v. Univ. of Minnesota, 304 F.3d 797, 801 (8th Cir. 2002). In order to properly dismiss a case for lack of subject matter jurisdiction, the complaint must be successfully challenged on the factual truthfulness of its averments or on its face. Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993). In a factual 12(b)(1) motion, the trial court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn v. U.S., 918 F.2d 724, 730 (8th Cir. 1990).

"Article III standing is a threshold question in every federal court case." U.S. v. One Lincoln Navigator 1998, 328 F.3d 1011, 1013 (8th Cir. 2003). The doctrine of standing "requires federal courts to satisfy themselves that 'the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'" Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). To satisfy the standing requirements of Article III, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)). The party invoking federal jurisdiction bears the burden of establishing the elements of standing. Lujan, 504 U.S. at 561.

Plaintiff alleges that defendants violated RESPA by failing to respond to his QWR within the time specified by the statute. 12 U.S.C. § 2605(e). Pursuant to the express language of the statute, however, civil liability under RESPA is limited to "borrowers." 12 U.S.C. § 2605. Multiple courts have held that plaintiffs who are not borrowers lack standing to bring claims arising from foreclosure. See Johnson v. Ocwen Loan Servicing, 374 F. App'x 868, 873-74 (11th Cir. 2010) (unpublished) (plaintiff challenging lender's practices was not borrower and thus did not suffer injury-in-fact and was not in "zone of interest" protected by RESPA and FDCPA); Naylor v. Wells Fargo Home Mortgage, Inc., No. 3:15-CV-116-RJC, 2016 WL 55292, at *6 (W.D.N.C. Jan. 5, 2016) (plaintiff whose husband was borrower did not have standing to challenge foreclosure under RESPA); Green v. Central Mortgage Co., No. 14-CV-04281-LB, 2015 WL 5157479, at *4-5 (N.D. Cal. Sept. 3, 2015) (plaintiff who received title to property by operation of trust on parents' death did not have standing to bring claims arising from foreclosure because she was not debtor); Leblow v. BAC Home Loans Servicing, LP, No. 1:12-CV-00246-MR-DLH, 2013 WL 2317726, at *7 (W.D.N.C. May 28, 2013) (husband of borrower did not have standing to assert RESPA claims); Correa v. BAC Home Loans Servicing LP, 853 F.Supp.2d 1203, 1207 (M.D. Fla. 2012) (plaintiff who provided down payment did not have legal rights of borrower under RESPA). Plaintiff was not a party to the loan and thus lacks standing under RESPA.

Plaintiff also alleges that defendants violated provisions of the FDCPA by falsely claiming they had standing to foreclose on the loan and by representing they would not take action to foreclose until he had an opportunity to obtain a loan modification or deferment. As with his RESPA claims, however, plaintiff is not within

5

the class of persons the FDCPA is intended to protect. The statute expressly protects "consumers," which is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C.A. § 1692a; see Johnson, 374 Fed. App'x at 874 (plaintiff's mother was borrower and thus plaintiff lacked standing under FDCPA). Here, because plaintiff did not sign the note, he was not obligated to pay the mortgage. He was also not "allegedly obligated" to pay the debt because defendants' efforts to collect past due amounts were directed to Mrs. Willis or her estate. To the extent that plaintiff claims that defendants violated the FDCPOA by misrepresenting that he would have "ample opportunity" to obtain a loan modification or deferment, he cannot succeed because he never properly completed the necessary applications for such relief and has not established that he had the legal authority to obtain a loan modification or deferment on behalf of Mrs. Willis's estate.

Plaintiff lacks standing to bring claims under RESPA and the FDCPA and his federal causes of action must be dismissed. Furthermore, plaintiff has not adequately pleaded a basis for diversity of citizenship jurisdiction under 28 U.S.C. § 1332, and his state law claims must be dismissed for lack of subject matter jurisdiction. See Green Acres Enterprises, Inc. v. United States, 418 F.3d 852, 856 (8th Cir. 2005) (plaintiff has burden of establishing subject matter jurisdiction).

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss [Doc. #16] is **granted**.

**IT IS FURTHER ORDERED** that plaintiff's motion to strike [Doc. #18] is **denied**.

**IT IS FURTHER ORDERED** that the motion of defendant BSI to dismiss the original complaint [Doc. #5] is **denied as moot**.

A separate order of dismissal will be entered.

```
                                        _____
                                        CAROL E. JACKSON
                                        UNITED STATES DISTRICT JUDGE
```

Dated this 25th day of January, 2016.